LEONARD D. FISK ET AL. *vs.* THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

If the laches of a party make it difficult or impossible for the court to enjoin his adversary without inflicting great injury thereby, an injunction should be refused and the party be left to his remedy at law.

A riparian mill owner who has for many years knowingly permitted a city to take its water supply in gradually increasing quantities from the head-waters of the stream, by means of expensive reservoirs and distributing mains, is not entitled to an injunction to restrain such diversion. Nor will the delay of the mill owner in asserting his rights be excused or justified, merely because the city had until recently found it economical and convenient to return the greater part of the water thus taken, in the form of sewage, to the stream above his dam.

[Argued May 4th—decided July 26th, 1898.]

SUIT for an injunction to restrain the defendant from diverting the waters of Park river and its tributaries until the damages accruing to the plaintiffs from such diversion had been ascertained and. paid, brought to the Superior Court in Hartford County and reserved by that court, *Shumway, J.,* upon the defendant's demurrer to the complaint, for the consideration and advice of this court. *Judgment sustaining demurrer to relief advised.*

Fisk et al.*v.* Hartford.

In one aspect of it this case has already been before this court. *Fisk* v. *Hartford*, 69 Conn. 375. After the decision in that case the plaintiffs filed in the Superior Court a substitute complaint which, as subsequently amended, is as follows: "1. The plaintiffs in January, 1892, became and ever since have been and still are the owners of a valuable mill property on the Park river in the city of Hartford, with mills upon both sides of the river, one upon Elm street and the other immediately opposite upon Wells street. They are the owners at that point and for a considerable space upon each side of it, of the banks of the river and of its bed, and the exclusive owners of the water privileges at that point. 2. The water power available at this point to the plaintiffs by means of their dam, is equivalent to about 200 horse power upon the average. 3. The said water privilege is an ancient one, having been established, used, and occupied as such for more than 250 years. 4. The value of the mill property in connection with the water privilege is $250,000, and the plaintiffs have established a large and profitable business thereon as millers, and the water power is sufficient, without the assistance of steam, to carry on the entire business of the plaintiffs as such millers. 5. The defendant is the owner of a large and important system of reservoirs for the use of the citizens of Hartford for domestic and other purposes. The water of all these reservoirs is communicated to a certain distributing reservoir, whence by leading pipes it is carried to the streets, houses, stores, and lands in the city, and heretofore has been nearly in whole returned to Park river above the plaintiffs' dam by the drains, pipes, and sewers of the city, and was heretofore made available thereby to the plaintiffs in the use of their said water privileges. The several reservoirs constituting said system have been used as aforesaid by the defendant, and without any agreement with the plaintiffs or their predecessors, from the dates of their construction respectively, as follows: Reservoir No. 1, called the distributing reservoir, January 2d, 1867; reservoir No. 2, during the year 1868; reservoir No. 3, October 30th, 1875; reservoir No. 4, during the year 1879; reservoir No. 5, dur-

ing the year 1884; reservoir No. 6, October 1st, 1895.   6. All the water collected and carried by the city in all of said reservoirs is from brooks, streams, and springs which are tributary to Park river, to the current and flow of which the plaintiffs are entitled by their mill and riparian rights aforesaid.   7. Since the introduction of the system of water supply by said city referred to in paragraph 5, down to within a few months of the present time, the water collected in such reservoirs as they were severally completed and put in operation, has been largely if not entirely returned to said river, and made available for the use of the plaintiffs in the enjoyment of the said mill privileges as set forth in paragraph 5. 8. The city has recently, to wit, within about a year of the date of this complaint, built and completed a reservoir in the town of Bloomfield, known as the Tumble-down Brook reservoir, of very extensive area, in which the said city has accumulated and still continues to accumulate and hold vast quantities of water from the watersheds, streams, brooks and springs tributary to said Park river, and to whose usufruct the plaintiffs are entitled as aforesaid, and has connected the same by canals with said distributing reservoir, whence the said water has, until within a few months of this date, been returned to said river and made available for the uses of the plaintiffs in their mill work, as set out in paragraph 5.   9. The surface water flowing from all points this side of the distributing reservoir has, until the completion of the intercepting sewer hereinafter referred to, found its way either by direct surface flowage, or by the existing drains, pipes, and sewers of the city, into the Park river; some small portion of said surface water, however, and also a small portion of the water brought from the reservoirs is carried into Park river below the complainants' dam.   10. The said city has constructed and substantially completed, within a few months prior to the date of this substituted complaint, an immense intercepting sewer, designed to divert, and which does divert, all the surface water and all the water accumulated in said reservoirs which would otherwise flow into Park river above plaintiffs' dam, away from said Park river into

the Connecticut river.   11. The proposed intercepting sewer is particularly described in an exhibit which, by reference, is made part of this complaint, and will be filed in court as ' Exhibit A.'   12. The accumulation of water in the system of reservoirs as aforesaid, and its distribution through drains and pipes into the Connecticut river as above set forth, diverts from said Park river and from the use of the plaintiffs in their mill privileges aforesaid, one half of the volume of water whose usufruct belongs to them, to their great injury and damage; and said injury and damage will be continuous and a constant and perpetual source of injury to the plaintiffs, unless such diversion is restrained by injunction.   13. Since the commencement of this action, and before the filing of this substituted complaint, defendant has connected all the aforesaid local drains and sewers, within the circuit reached and affected by the intercepting sewer, with said intercepting sewer, and has thereby and by taking the surface and other water which before had reached the river and was available and useful to the plaintiffs, and by diverting the waters of Park river and its tributaries into the defendant's reservoirs and pipes, already diverted a large part of the current and flow of said stream away from the plaintiffs, and has deprived them of its use, greatly to the plaintiffs' damage; and, unless restrained by your honorable court by injunction, the defendant threatens to continue said diversion and will continue the same, to the continuing and perpetual damage of the plaintiffs.   14. And the defendant has already taken and will continue to take this water supply from the plaintiffs in large part, and away from the use of their mill, and the defendant has taken and will continue to take, unless restrained by your honorable court, from the tributaries of Park river and from Park river, the supply of water to whose use the plaintiffs are entitled as aforesaid. And the defendant is diverting the water of Park river and its tributaries into its reservoirs and distributing pipes as aforesaid, from the use of the plaintiffs, and the defendant is exclusively using the said water so diverted, and will so continue to exclusively use the water so diverted, unless re-

strained by your honorable court from such diversion and such use. 15. The defendant has never compensated nor paid in any way the plaintiffs for damages occasioned to them by defendant's appropriation of the water, or for the diversion of the current and flow of water to which they are entitled as aforesaid, nor have any steps or proceedings been taken to ascertain the amount of such damages, nor has any attempt been made to agree with the plaintiffs as to the amount of damages thereby occasioned, nor has any compensation ever been made to the predecessors of the plaintiffs in the ownership of the mill privileges aforesaid for such appropriation and diversion. The storage capacity of said reservoirs is as follows: No. 1, 146,000,000 gallons; No. 2, 284,000,000 gallons; No. 3, 146,000,000 gallons; No. 4, 601,000,000 gallons; No. 5, 94,000,000 gallons; No. 6, 800,000,000 gallons; No. 6 is the reservoir heretofore referred to as Tumble-down Brook reservoir. 16. The average daily consumption of said water by the defendant's water department is about 7,000,000 gallons. The plaintiffs claim: 1. An injunction restraining the defendant from diverting any water from the watershed to whose usufruct plaintiffs are entitled as aforesaid, by accumulating the same in reservoirs or otherwise, or from interfering in any way with the use by the plaintiffs of the waters of Park river or of any of its tributaries, until the damages accruing and hereafter to accrue to the plaintiffs from the diversion complained of shall have been ascertained and paid in accordance with law. 2. Such other and further relief as to equity may pertain."

To this complaint and to the relief sought the defendant demurred, and for causes of demurrer assigned the following: "*First.* Because the substituted complaints set forth no valid cause of action, and no grounds upon which an injunction should be granted against the defendant. *Second.* The entire substituted complaint is in substance the same and nearly identical in words with the original complaint as amended, except the averments that the defendant now has diverted or does divert water from the sources of

Park river, and on said original complaint an injunction has been refused. *Third.* Because this court has already decided, in conformity with the advice of the Supreme Court of Errors, that the plaintiffs are not entitled to an injunction to restrain the defendant from making use of said intercepting sewer, and the injunction now asked for would interfere with the use of the same. *Fourth.* Because it appears from the substituted complaint that the defendant long since adopted a system of reservoirs for the water supply of the city of Hartford, and has since been engaged in storing water in said reservoirs and thereby furnishing water to its inhabitants, all with the full knowledge and consent of the plaintiffs, and the plaintiffs have fully waived all right to an injunction against such storage of water. *Fifth.* Because it appears from the substituted complaint that the plaintiffs seek to obtain an injunction which would cut off the water supply of the city of Hartford unless and until certain alleged damages shall have been ascertained and paid, and because there is no law of this State under which, upon the allegations of the substituted complaint, damages must be ascertained before such damages have ensued to the plaintiffs. *Sixth.* Because an injunction, on the facts, is unnecessary and inequitable. There are no allegations in the complaint to the effect that the city of Hartford is not responsible for all damages which may accrue to the plaintiffs, or to show that such damages are irreparable, and because the plaintiffs have adequate remedy at law. *Seventh.* Because the averments of the substituted complaint have already been passed upon by this court and the Supreme Court of Errors, and the cause of action now set forth is the same one as formerly alleged, to wit, the diversion of water from the sources of Park river and taking the same past the plaintiffs' dam to the Connecticut river, and the new complaint sets forth no new right or cause of action and no new grounds on which an injunction should issue. *Eighth.* The defendant demurs to the relief sought in the substituted complaint, because upon the facts alleged the plaintiffs are not entitled to the relief therein sought."

The questions arising upon this demurrer are reserved for the advice of this court.

*Lewis E. Stanton* and *William J. McConville,* for the defendant (in support of the demurrer).

This court has decided that an injunction ought not to issue to restrain the city from making use of the intercepting sewer, or to prevent the city from disposing of sewage.   How can the intercepting sewer be used in order to promote the health and cleanliness of the city without water to run through it?   The supply of water to a large number of persons is a public purpose.   Aqueduct companies and cities having a water system are under a public duty to furnish water. *Lumbard* v. *Stearns,* 4 Cush. 62.   The city in furnishing a water supply is engaged in a public and governmental duty, and will not be arrested in the discharge of this duty by injunction.   *Slaughter-house Cases,* 16 Wall. 36; *Mugler* v. *Kansas,* 123 U. S. 623, see page 658; *Munn* v. *Illinois,* 94 id. 124; *Taunton* v. *Taylor,* 116 Mass. 254; *Watertown* v. *Mayo,* 109 id. 315; *Commonwealth* v. *Alger,* 7 Cush. 52, see pages 85, 86; *Matter of Cheesbrough,* 78 N. Y. 232; *Russell* v. *Mayor,* 2 Denio, 461–474; *Bertholf* v. *O'Reilly,* 74 N. Y. 509; *Morgan* v. *Danbury,* 67 Conn. 484.   The city cannot be a violator of the law at the very time it is acting under the law in order to promote the health of the people.   That which the law authorizes cannot be a nuisance.   *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Baker* v. *Boston,* 12 Pick. 184; *Atwater* v. *Canandaigua,* 124 N. Y. 602.   Mere consequential injuries do not amount to a taking of property for public use.   Cooley's Const. Lim. 542–544.   Even if the plaintiffs are entitled to compensation they have not sought the proper remedy.   *Diamond Match Co.* v. *New Haven,* 55 Conn. 510; *Judge* v. *Meriden,* 38 id. 90; *Healey* v. *New Haven,* 47 id. 305.   An injunction ought not to be granted in this cause, for the reason that the plaintiffs' right is doubtful, and they have full and adequate remedy at law for any consequential damages which may be inflicted upon them.   *Hawley* v. *Beardsley,* 47 Conn. 571; *Dodd* v. *Hartford,* 25 id. 232;

*Sheldon* v. *Center School District*, 25 id. 224. The plaintiffs, upon their own allegations, have waived all right to an injunction.

*Henry C. Robinson* and *William F. Henney*, for the plaintiffs (in opposition to the demurrer).

The complainant unquestionably sets up a valid cause of action. *Wadsworth* v. *Tillotson*, 15 Conn. 366 ; *Parker* v. *Griswold*, 17 id. 288 ; *Harding* v. *Stamford Water Co.*, 41 id. 87 ; *Mason* v. *Hoyle*, 56 id. 256 ; *Kellogg* v. *New Britian*, 62 id. 232 ; *Stock* v. *Jefferson*, 38 L. R. A. 355. The allegations of the substituted complaint materially differ from those of the original complaint, notwithstanding the fact that, in describing the method made use of by the city to divert the stream, we may have employed many terms and expressions made use of in the original complaint. Nothing is said in the substituted complaint about any waiver, nor has any waiver been pleaded by the defendant. Of course, if any such waiver is relied upon, it should be pleaded by the defendant, and the burden would be on the defendant to support it by proper proof. This is a general rule of pleading, always insisted upon at common law, and by the spirit of the Practice Act. Besides the impriority of urging waivers, and estoppels, and acquiescence, in a demurrer resting upon matters which occurred " long since," in a case of this kind, the defense is not available even if properly pleaded. Lewis on Eminent Domain, § 648 ; *Higby* v. *N. J. R. Co.*, 20 N. J. Eq. 435 ; *Morris* v. *R. Co.*, ibid. 530. As the complaint shows that one of these reservoirs was completed within a few months of the bringing of this suit, and that one, No. 6, the largest of them all, and that No. 4, the next largest, and No. 5, were all built within twenty years, and as these three reservoirs appropriate three quarters of the stream which the city is now diverting from us, there could be no proof of lawful authority, even if the defendant has used proper forms of pleading. It has never been held that property of this character could be taken without just compensation, no matter what hardship might be inflicted by restraining the taking of such property when

unauthorized by law.   The same objection might have been urged in the case of *Harding* v. *Stamford Water Co.*, and was urged in substance.   In that case precisely the same taking was complained of as in this instance, "that the taking of the water of the stream to supply the inhabitants of a village with water is a taking for public use admits of no question, nor can the power of the legislature to take property for such use be for a moment questioned."   In that case the reservoir had been built and in operation for several years, and the Supreme Court advised that compensation should be made within a given time, or that a perpetual injunction should issue.   The city also claims that the damages are not irreparable, and that the plaintiffs have adequate remedy at law. It would seem to be useless to make such a claim in view of the continuing nature of these damages and the adjudicated cases.   *Gardner* v. *Newburgh,* 2 Johns. Ch. 161; *Hooker* v. *New Haven & N. Co.*, 24 Conn. 158; Tiedeman on Mun. Corp. p. 787, *n.* 1; *Hollingsworth* v. *Water Supply District,* 165 Mass. 188; *Proprietors* v. *Water Supply Co.*, 149 id. 478, 484; *Hart* v. *Aqueduct,* 133 id. 488; *Cowdry* v. *Woburn,* 136 id. 409, 411; *Middletown* v. *Browning Co.*, 27 Mich. 533; *Lyon* v. *McLaughlin,* 32 Vt. 423; *Danbury & N. R. Co.*, 37 Conn. 109; *Woodruff* v. *Catlin,* 54 id. 277; *Morgan* v. *Danbury,* 67 id. 484; *Imlay* v. *Union Branch R. Co.*, 26 id. 249; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146.   There can be no successful claim of *laches* on our part of this case.   *Laches* always depends upon circumstances, and, where there is a reasonable excuse for delay, the delay is not imputed to the party as an act of *laches.*   *Griswold* v. *Hazard,* 141 U. S. 260; *Hammond* v. *Hopkins,* 134 id. 224; *Wetsall Cases* v. *Minn. T. R. Co.*, 56 Fed. Rep. 923, 65 id. 29.   As to when *laches* and limitations begin to run, see 1 Wood on Lim. (2d ed.) 450, 461, note, 462, note; *Backhouse* v. *Bonomi,* 1 El. B. & S. 910; *Polley* v. *McCaull,* 37 Ala. 20; *Arnold* v. *Hudson River R. Co.*, 55 N. Y. 661; *Wagner* v. *Jermaine,* 3 Denio, 306; *Uline* v. *N. Y. C. & H. R. Co.*, 101 N. Y. 98; *Bare* v. *Hoffman,* 79 Pa. St. 71; *Thayer* v. *Brosks,* 10 Ohio, 489.

TORRANCE, J.   The principal question upon this reservation is not whether, upon the facts alleged, the plaintiffs are entitled to any remedy, nor if so to what remedy, but it is whether they are entitled to the specific remedy by way of injunction claimed by them.

The defendant under its second, third and seventh causes of demurrer contends, in substance, that this court has already decided this question against the plaintiffs in the case of *Fisk* v. *Hartford*, 69 Conn. 375.   In support of this contention it is claimed that the present complaint is substantially the same as the original complaint; that it sets forth no new facts, and no new grounds on which an injunction should issue; and that the prayer for relief is substantially the same as in the former case.

We think the case referred to does not decide the question raised here, and that a comparison of the original complaint and prayer for relief with the present complaint and prayer for relief, clearly shows that the defendant's contention is not well founded.   The original complaint in substance and effect prayed that the city might be restrained from disposing of its sewage through the intercepting sewer, and this court said that prayer ought not to be granted.   The present complaint prays that the city may be restrained from diverting the waters of Park river and its tributaries into the reservoirs and leading pipes of the city, to the injury of the plaintiffs' rights; and the question whether, upon the facts now stated, this prayer should be granted, was neither considered nor decided in the former case, and is now for the first time properly before this court.

We also think that the present complaint states a valid cause of action for damages at least, and that it sets out such facts as would ordinarily entitle the plaintiffs to the equitable relief here sought, unless it also shows that they have delayed so long in applying for it as to make it inequitable now to grant it.   The only question, therefore, raised by the demurrer, which we deem it necessary to consider at any length, relates to the *laches* or delay of the plaintiffs and their predecessors in title in seeking this remedy.

The city began to construct its present system of reservoirs for the storage of the waters of Park river and its tributaries, and to divert said waters into such reservoirs and distribute it for public use, more than thirty years ago. The first reservoir was built in 1867, the second in 1868, the third in 1875, the fourth in 1879, the fifth in 1884, and the sixth in 1895. These reservoirs have an aggregate storage capacity of nearly twenty-one hundred million gallons. As they were constructed from time to time the waters of Park river and its tributaries were diverted into them and accumulated therein, and distributed therefrom to the city and its inhabitants for their use. The city during these thirty years has expended very large sums of money in completing its present system of waterworks, including the reservoirs aforesaid, the distributing mains and pipes and its sewerage system; and the city is now and for many years past has been practically dependent upon said waterworks for its supply of water for domestic use, for protection against fire, and for all other purposes for which water is used in cities. All that the city has thus done during the past thirty years in the construction of its system of water supply, and in the use of the waters of Park river and its tributaries, was done with the knowledge of the plaintiffs and their predecessors in title, but without any agreement with them, and without objection from them until about 1895 or 1896. In the latter year the plaintiffs brought this suit; but, as before stated, it was brought originally not, as now, to prevent the city from diverting the waters of Park river into its reservoirs, but to prevent it from emptying its sewage into the intercepting sewer.

It is, however, further admitted by the pleadings, that until the intercepting sewer was built and used, the city returned to Park river, above the plaintiffs' dam, through its sewer pipes, substantially all the water diverted into its reservoirs, and the important question in the case is whether this fact furnishes a sufficient excuse or justification for the delay of the mill owners in asserting their rights. Upon the admitted facts we think it is clear that the rights of the mill

owners were invaded by the first substantial diversion of these waters in 1867, and they were violated by each subsequent diversion into the new reservoirs as they were built and used from time to time. The water was diverted, not with a view of returning it as water into Park river again, but in contemplation of the fact that it would be used and disposed of as the city saw fit; with the certainty that it would be converted into sewage which the city would have no right to pour into Park river to the detriment of the riparian proprietors, and which it would have the right to carry elsewhere. As against these mill owners and other riparian proprietors along this river, the city had no right either to divert or to pollute its waters to the detriment of such proprietors, without their consent and without compensation made for the injury. The fact that the city emptied its sewage into Park river above the dam, and thus lessened the damages which would otherwise have been caused to the mill owners by the diversion of its waters, did not make the diversion and pollution of its waters any the less an invasion of the rights of the mill owners. The city emptied its sewage here as a mere matter of convenience and to save expense. It could cease to do so when it chose, it could be compelled to carry it elsewhere or pay for the privilege of emptying here, and the mill owners had no right to have it emptied here.

We think it is clear that when the city first began to divert this water to the detriment of the mill owners, without their consent and without making compensation to them, it was an invasion of their rights, even though the city did return the water so diverted, in the shape of sewage, into the river above the dam; it was such an invasion of their rights as would have been enjoined against in a proper proceeding upon sufficient proof, and the fact that the water was so returned as sewage would have been no defense in such a proceeding. This invasion and violation of the rights of the mill owners has been continuous since 1867, and it has grown in extent with the growth of the city and the use of

each new reservoir. So far then as the right to an injunction is concerned, the mill owners have slept upon their rights during all these years with full knowledge of all the facts. The fact that they were willing to accept the sewage of the city upon sufferance and at the will of the city, in place of the water to which they were entitled as of right, furnishes we think no legal excuse for this long delay in asking for an injunction. They now ask a court of equity to cut off the entire water supply of a great city until it pays them the damages to which they shall prove themselves entitled. The city is and will continue to be abundantly able to pay all such damages, and the remedy of the plaintiffs at law to recover such damages is adequate and complete. To cut off the entire water supply of this city for any considerable length of time, would cause great public inconvenience and suffering, and would greatly endanger the lives and property of its inhabitants in case of fire, or from disease. The granting or refusal of an injunction rests in each particular case in the sound discretion of the court, exercised according to the recognized principles of equity. It ought not to be granted where it would be productive of great hardship or oppression, or great public or private mischief. *Hawley* v. *Beardsley*, 47 Conn. 571; *Logansport* v. *Uhl*, 99 Ind. 531.

It is a well established rule in equity that if a party is guilty of *laches* or unreasonable delay in applying for an injunction, he may thereby forfeit his claim to that special form of remedy; and where in such case, by his *laches*, he has made it impossible or very difficult for the court to enjoin his adversary without inflicting great injury thereby, an injunction should be refused and the party left to his remedy at law. *Traphagen* v. *Jersey City*, 29 N. J. Eq. 206; *State* v. *Paterson*, 40 N. J. L. 244; *Logansport* v. *Uhl, supra; Tash* v. *Adams*, 10 Cush. 252; 2 Pom. Eq. § 817.

Applying these principles to the facts in this case, we think an injunction should not be granted. Great harm would or may result to the city and its inhabitants if an injunction

should be granted, and little or none can result to the plaintiffs if it is refused.

The Superior Court is advised that the demurrer upon this point should be sustained, and that an injunction should be refused.

In this opinion the other judges concurred.