No. 19,406.

W. T. DYKES, *Appellant*, v. NOAH LONG et al., *Appellees*.

SYLLABUS BY THE COURT.

WATERCOURSE—*Diversion of Water—Dam to Create a Pond— Injunction Refused*. The owner of land through which flowed a small stream, sufficient to supply stock water for pasture, built a dam to create a pond, chiefly for hunting and fishing, a spillway being provided through which the overflow passed into the original channel. This was done with the knowledge of, and without any objection from, a lower riparian owner, who expressed a favorable opinion of the project. During the second summer thereafter the stream below the dam ceased to flow. The owner sought an injunction against the maintenance of the dam and was denied that relief. *Held*, that in view of all the circumstances the ruling was not erroneous.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed April 10, 1915. Affirmed.

*C. M. Williams*, of Hutchinson, and *William Dixon*, of St. John, for the appellant.

*Paul R. Nagle*, of St. John, for the appellees.

The opinion of the court was delivered by

MASON, J.: In the spring of 1912 Noah Long, and others associated with him, built a dam about four feet high, of concrete and earth, across a small stream on land owned by him, creating a pond about a quarter of a mile long and fifty or sixty feet wide, chiefly for hunting and fishing purposes. A spillway was left

through which the overflow passed, following the old channel. W. T. Dykes owned the land just below the dam. Prior to its construction the stream had supplied him sufficient water for stock purposes. This continued to be the case during 1912. But in 1913 the water ceased to flow through the spillway and the stream below the dam ran dry. In September of that year Dykes brought an action to enjoin the maintenance of the dam. The injunction was denied and the plaintiff appeals.

Where by the erection of a dam the waters of a stream are spread over a larger area, and the increased evaporation and seepage lessen the amount of water that flows to the land of a lower proprietor, the result is regarded as a diversion. (*White v. East Lake Land Co.*, 96 Ga. 415, 23 S. E. 393, 51 Am. St. Rep. 141; Note, 41 L. R. A. 746; 40 Cyc. 571, 607.) But whether in such a case equity will require the removal of the obstruction, or whether the injured person will be left to his remedy in damages, is a matter to be determined upon consideration of all the attendant circumstances, and is said to rest in the sound discretion of the trial court (30 A. & E. Encycl. of L. 371; *Fisk et al. v. Hartford*, 70 Conn. 720, 40 Atl. 906), the discretion referred to being of course not absolute, but required to be exercised in accordance with equitable principles.

Here the trial court held that the remedy in damages was adequate, and that the conduct of the plaintiff had been such as to justify the denial of an injunction. It was found that during the building of the dam he talked with some of the defendants regarding it, made no objection to it, and said in effect that he believed it would be a good thing for the country; that on the suggestion being made that he build a dam on his own place, he said he would wait and see the result of that built by the defendants. One who acquiesces in the construction of a dam, and without protest sees money so invested that returns from the investment are dependent upon

12—95 Kan.

it, is ordinarily estopped to demand its removal. (Note, 2 Ann. Cas. 786; Note, Ann. Cas. 1914 B, 996; Note, 50 Am. Rep. 117.) In the present case the investment in building the dam and stocking the pond with fish was found to be $1000, a less amount than that usually expended where this principle has been applied, but the loss suffered by the plaintiff is also obviously less than in most of the instances referred to. In *Thomas v. Woodman*, 23 Kan. 217, the court suggested that acquiescence might not result in an estoppel as to an unforeseen injury, but added that where the parties were equally mistaken as to the consequences, and can not be placed in exactly their former position, "a court of equity will weigh the hardships of the case, the justice or the injustice of stopping such diversion, and will grant or refuse orders of injunction or for abatement, as shall be most in consonance with the equities of all the parties. If possible, the inconveniences of the parties will be regarded; and to balance these inconveniences and injuries of parties thus acting towards each other, when inconveniences and injuries unexpectedly ensue, equity will generally decline to interfere on either side, but leave the parties to their legal rights and their legal liabilities." (p. 226.)

In the present case the parties were on equal footing as to knowledge of the probable consequences of the erection of the dam. That some slight diminution of the flow in hot and dry weather might result was fairly to have been anticipated. A dam at the same place had been constructed for the operation of a mill in 1878, and had been maintained until sometime between 1892 and 1897, when the mill was removed, the dam remaining as it was, except as it wore away by the flow of water across it, and by the tramping of horses and cattle over it. This may have been of some aid in judging of the results likely to ensue upon the building of the new dam. How much of the lessened flow complained of by the plaintiff was actually due to it and

Dykes v. Long.

how much to unusual weather conditions is uncertain. The court found that "it is extremely doubtful whether if the said dam had not been in existence there would have been a flow of water sufficient during the dry season of 1913 to supply the plaintiff with sufficient water for his stock," and in effect that the flow of the stream across the plaintiff's land, which was restored by the fall rains within a month after the action was brought, was not likely to be again interrupted unless by reason of a recurrence of such excessively hot and dry weather as was experienced during the preceding summer. In a written opinion the judge said:

"From my own inspection of the situation I am convinced that the only reason the water did not continue to pour over the spillway of said dam was because of the excessively hot and dry season and the failure of the springs in the marsh above the dam to supply the usual volume of water."

A further finding was made that when the plaintiff complained of the dam the defendants offered to furnish appliances to carry water from the pond to his premises, sufficient to accommodate his stock, and to supply water in this manner twice a day—an offer which he refused. In view of the whole situation we think it can not be said that the court erred in denying the injunction and in remitting the plaintiff to his remedy in damages. This decision is not based on the theory that the plaintiff was absolutely estopped to claim the protection of a court of equity, but upon the conclusion that, giving weight to his conduct, and also to the character of his injury, to the doubt concerning its cause and permanence, and to its extent as compared with the loss to the defendants if the dam is removed, an injunction is not shown to be necessary to a just termination of the controversy.

The judgment is affirmed.