DONALD O. HAMMERBERG, MILK ADMINISTRATOR *v.* FRANK LEINERT.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 7, 1945—decided March 6, 1946.

*Bernard A. Kosicki,* assistant attorney general, with whom were *Jack Rubin* and, on the brief, *William L. Hadden,* attorney general, for the appellant (plaintiff).

*George F. Hanrahan,* for the appellee (defendant).

BROWN, J. The plaintiff as milk administrator brought this action under the Milk Marketing Act (General Statutes, Sup. 1941, Chap. 107b), alleging the defendant's refusal to pay amounts due to his producers, under the plaintiff's order issued by virtue of the act, for the period from February, 1942, to April, 1943, and asking an injunction to compel the defendant to comply therewith. From the court's judgment for the defendant denying the injunctive relief sought, the plaintiff has appealed.

The essential facts are undisputed. The defendant is a "dealer" under the act, § 335f, engaged in buying, selling and distributing milk in Darien. As such he

was subject to the provisions of a valid order, duly issued by the plaintiff, which in its amended form became effective on January 1, 1942. This established minimum prices to be paid for milk bought by "dealers" in that area from farmers who were the "producers." From February 1, 1942, to April 30, 1943, inclusive, the defendant paid his producers $4330.72 less than he should have paid them for milk which they delivered to him, as computed under the provisions of the order. Up to the time of judgment, the defendant had neglected and refused to pay this money to them, and to that extent had failed to comply with the terms of the order. Such a failure tends to hamper the effective administration of the act and gives the defendant an unfair advantage over dealers in competition with him who pay the minimum prices ordered. It did not appear that the defendant intended to evade liability for the underpayments in question, or that he intended to commit any future violation of the plaintiff's existing orders; nor did it appear that any producer affected by the defendant's underpayments had either made demand for any additional sum or been refused payment of such sum by him. The plaintiff had issued no order that amounts found to be due producers be paid to him as administrator.

The defendant concedes that he is indebted to his producers in the aggregate amount above stated and that he should pay them the amounts respectively due. His claims are comprehended in the single proposition that the plaintiff is not entitled to enforce payment by injunction, and this presents the vital question for determination. Since neither law nor equity, with scant exceptions not here involved, recognizes a right in one person to compel another to perform an obligation the latter owes to a third, the plaintiff's right to the injunctive relief which the trial

court denied cannot exist under the general equity powers of the court but only by virtue of the statutory provision. The defendant concedes that the statute is valid. This concession finds justification in abundant authority. See *Carroll* v. *Schwartz,* 127 Conn. 126, 128, 14 Atl. (2d) 754; *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* 128 Conn. 596, 604, 24 Atl. (2d) 841; *United States* v. *Stevens,* 103 Conn. 7, 18, 130 Atl. 249; *State Board of Milk Control* v. *Newark Milk Co.,* 118 N. J. Eq. 504, 513, 179 Atl. 116; *United States* v. *Rock Royal Co-operative, Inc.,* 307 U. S. 533, 59 Sup. Ct. 993; *H. P. Hood & Sons, Inc.* v. *United States,* 307 U. S. 588, 59 Sup. Ct. 1019; *Elm Spring Farm* v. *United States,* 127 Fed. (2d) 920, 925, 928; *American Fruit Growers* v. *United States,* 105 Fed. (2d) 722, 725; *United States* v. *Adler's Creamery,* 110 Fed. (2d) 482; *United States* v. *Adler's Creamery,* 107 Fed. (2d) 987, 990; *United States* v. *Ridgeland Creamery Co.,* 47 Fed. Sup. 145, 150; 50 Harv. L. Rev. 171, 225. The validity of the plaintiff's order, issued pursuant to the statute, is also conceded. The decisive issue therefore is narrowed to whether, upon the undisputed facts, the court, in the exercise of equitable powers conferred upon it by the statute, abused its discretion by refusing to grant an injunction. In its solution, the nature of the defendant's admitted obligation under the act becomes important. See *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* supra. This involves a consideration of the purpose of the act and the reasons for its enactment as stated in it.

Section 334f recites that the production, sale and distribution of milk and milk products in this state are attended with serious conditions and practices affecting producers, dealers and consumers, and, briefly summarized, expressly declares as follows: The main-

tenance of a constant and wholesome supply of milk safeguarded by the essential costly sanitary requirements is vital for the promotion of the public health; the public health is menaced when consumers are not assured of a constant and sufficient supply of pure, wholesome milk, a situation which occurs when dealers do not or cannot pay a price to producers commensurate with the cost of sanitary conditions of production and high standards of purity; to avoid the "unfair, unreasonable and demoralizing trade and price practices, detrimental to the public health," naturally incident to the widely varying surpluses of fluid milk in dealers' hands for which they must "find an immediate market," which "excess milk is normally diverted into other uses at lower prices," producers who sell to dealers "should receive a proportionate share of the proceeds from the sale of milk in fluid form and in the lower price outlets," if "stable market conditions and equitable treatment of producers are to be assured"; producers "are required to make delivery of this highly perishable commodity immediately after it is produced and therefore must often accept any market at any price"; because of the above facts "the value of milk cannot be determined until the dealer has sold" it "in fluid form or has disposed of it in surplus outlets," with the result that "prior and often exclusive knowledge of the value of milk is in the possession of the dealer"; "the producers' lack of control over their market is aggravated by the trade custom" of substantial delay in payments by the dealers, which often compels producers to continue delivery to insure receipt of payments already due and permits "dealers to operate on the producers' capital without giving security therefor"; "hence, milk producers are subject to fraud and imposition, and do not possess the freedom of contract necessary for the pro-

curing of cost of sanitary production"; the foregoing "conditions and practices pertain to and exist in a paramount industry upon which" the public health and welfare are largely dependent, and the public interest requires their amelioration. The statute concludes: "In exercise of the state police power to protect and promote the public health and welfare and to prevent fraud and imposition upon producers, such conditions and practices require control and regulation of the production, transportation, manufacture, processing, storage, distribution, sale and handling of milk as a business affecting the public health and interest."

It is to meet this need that the act goes on to provide for the appointment of a milk administrator and to confer upon him "power to investigate and regulate all phases of the milk industry in this state." Section 337f (c) expressly empowers him "to issue orders prescribing minimum prices to producers." The reasons for this enactment and its purpose, as shown by the above provisions, make clear that the obligation of the defendant arising under it, which is the obligation concerned in this case, involves something beyond the mere existence of the debts due to the respective producers. It is true that the creation of these obligations under the act constitutes one step toward the accomplishment of its purpose, but another which may be equally important, as appears from reasons stated in the act, is the establishment of an available remedy insuring an effective means of enforcing the payment of these obligations without delay. Presumably it was with this in mind that the legislature, in addition to according power to the administrator to deny a dealer a license to operate and to require a bond of him for safeguarding the producers, and to authorizing punishment by fine and imprisonment for

violation of the administrator's order, expressly provided in § 344f (a) that "relief to enforce compliance with or to restrain violation of any provision of this part or any order, ruling, regulation or direction issued thereunder may be by injunction" and that "the administrator shall not be required to allege or prove that adequate remedy at law does not exist," and in § 344f (c) that all of the above penalties and remedies "shall be deemed concurrent and independent."

In this case, entirely aside from this provision obviating the necessity of lack of an adequate remedy at law, the need, set forth in the foregoing recitals, of safeguarding the public health by adoption of the provisions contained in the statute, including those for the enforcement of prompt payment of amounts due from dealer to producers under the administrator's order, considered in the light of the multiplicity of suits in proceedings limited to legal relief, leaves no doubt that the statute entitled the plaintiff to resort to equity in this case. Under such circumstances, "The prevention of a multiplicity of actions at law is one of the special grounds of equitable jurisdiction, and for that purpose the remedy by injunction is freely used, and that, too, although there may be a legal remedy. 32 C. J. 55." *State Board of Milk Control* v. *Newark Milk Co.*, supra, 514. Furthermore, "Whether damages are to be viewed by a court of equity as 'irreparable' or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." *Robertson* v. *Lewie*, 77 Conn. 345, 346, 59 Atl. 409; *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.*, supra. The enforcement of the administrator's orders was a proper subject for injunctive relief under the statute. If remedy by injunction is deemed too drastic, alleviation must be sought from the legis-

lature and not from the courts. While one of the court's conclusions upon which its judgment rested was that it was within its judicial discretion to refuse the issuance of an injunction to enforce the payment of money, others were that the producers and also the administrator had "adequate remedy at law." The court's use in its conclusions of the words quoted indicates that it failed to recognize that the statute was effective to confer the right to injunctive relief, upon the grounds which we have just explained. Since it cannot be concluded that this did not essentially enter into the determination of the court's judgment that the injunction should be denied, it constitutes ground for error in the judgment.

The order in question prescribed that payment be made "to each producer." One conclusion of the court was that the refusal of the defendant "to pay the plaintiff" did not violate the order. The discrepancy indicated by the words quoted can afford no support for the rendition of judgment in favor of the defendant, because the third prayer for relief in the plaintiff's complaint is that the defendant be "commanded to comply" with the order. There was reversible error in the court's judgment.

It remains to determine whether the case should be sent back for a new trial or with direction that an injunction issue. If on the undisputed facts the denial of injunctive relief amounted to an abuse of discretion as a matter of law, judgment for the plaintiff must be directed. The defendant does not question that the plaintiff, pursuant to his authority under the statute, issued a valid order which obligated him to pay to his producers respectively the amounts in question, that he violated this order by failing to pay the amounts so due, that the plaintiff is entitled to enforce the order, and that by bringing this action the plaintiff is

seeking the "independent" remedy by injunction for which the statute expressly provides. In consequence of these conceded facts his contention is limited to the proposition that the plaintiff should be compelled to resort to one of the other less effective and less expeditious remedies which the statute also affords. This claim would seem to stem from a failure to give sufficient weight to the nature of the public interest involved, which the statute aims to safeguard, and to recognize equity's jurisdiction under it to grant the most effective enforcement of a proper order by the administrator, in contradistinction to merely compelling the payment of a private debt. It further disregards the express authorization given the administrator to choose his remedy.

In general, the granting or denial of an injunction rests in the sound discretion of the court, exercised according to the recognized principles of equity. *Fisk* v. *Hartford,* 70 Conn. 720, 732, 40 Atl. 906; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 554, 45 Atl. 154; *Farrington* v. *Klauber,* 130 Conn. 170, 173, 32 Atl. (2d) 644; *Heppenstall Co.* v. *Berkshire Chemical Co.,* 130 Conn. 485, 489, 35 Atl. (2d) 845. Where, however, upon the undisputed facts the only reasonable conclusion is that the plaintiff is entitled to injunctive relief, the denial of it may amount to an abuse of discretion and is subject to reversal upon appeal. Although in *United States* v. *Stevens,* supra, this court directed the Superior Court to grant injunctive relief, that case does not afford controlling authority, for by the express terms of the statute there involved such relief was mandatory. The determinative principle has been well stated by the California court in these words: Discretion means "a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat

the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis*, when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other." *Bailey* v. *Taaffe*, 29 Cal. 422, 424; see also *Moody* v. *Reichow*, 38 Wash. 303, 308, 80 Pac. 461; Bowers, Judicial Discretion of Trial Courts, p. 16; *Taylor* v. *Florida East Coast Ry. Co.*, 54 Fla. 635, 642, 45 So. 574; *People* v. *Gage*, 188 Mich. 635, 641, 155 N. W. 464; *Butler & Co.* v. *Strickland-Tillman Hardware Co.*, 15 Ga. App. 193, 194, 82 S. E. 815, *Matter of Bond*, 251 App. Div. 651, 654, 297 N. Y. S. 493; *Sanders* v. *Ryan*, 112 Ind. App. 470, 478, 41 N. E. (2d) 833; 5 C. J. S. 488; 28 Am. Jur. 501. There was an abuse of its discretion by the court in this case which requires reversal upon this appeal.

There is error, the judgment is set aside and the case is remanded with direction to the Superior Court to enter its judgment granting injunctive relief to the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.