## MURIEL STURMAN *v.* EDWARD SOCHA ET AL.
## (10163)

HEALEY, PARSKEY, SHEA, GRILLO and SPADA, Js.

Argued May 12—decision released August 9, 1983

1

*David M. Abbamonte,* for the appellant (named defendant).

*Sutherland W. Denlinger,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The defendant Edward Socha having been found individually liable to the plaintiff pursuant to a contract between the parties for an unpaid bill in the amount of $4093.60 for services rendered to Michael Socha, the defendant's father, has appealed to this court. On appeal he claims: (1) that the trial court erred in denying the defendant's motion for exemption from the trial list; and (2) that the trial court erred in finding that he was personally liable on the agreement sued upon.

At trial, the following facts were disclosed: Prior to December, 1971, the defendant's father had become a victim of arteriosclerosis which rendered him physically, but not mentally, disabled and unable to manage his business affairs. Because of this disability the defendant applied for and was appointed conservator of his father's estate by the Probate Court in Bridgeport in December, 1971.[1] In 1973, the defendant's father had one leg amputated and in July, 1974, his other leg was amputated. The defendant then commenced to search for a facility which would provide skilled nursing care for his father. On August 26, 1974, the defendant contacted the plaintiff's facility, Buckingham Gardens Nursing Home (nursing home), and, after consultation with a representative of the nursing home, he signed an "Admission Agreement" with the nursing home on August 26, 1974, which provided for the residential nursing care of the defendant's

---

[1] The defendant served as conservator of his father's estate until his resignation on March 10, 1978.

father at a rate of $33 per day. The defendant's father resided at the nursing home from August 27, 1974, to January 15, 1979, the date of his death.

The defendant filed an application on behalf of his father for benefits under title XIX of the Social Security Act in October, 1975. This application was denied initially by the Connecticut department of social services, but on appeal the court, *McGuinness, J.,* found the defendant's father to be entitled to title XIX benefits in a judgment rendered on June 6, 1977. The state department of income maintenance then proceeded to work out a compromise with the plaintiff for the payment concerning unpaid-for services rendered by the nursing home to the defendant's father. A formula for payment for future services to be rendered by the nursing home to the defendant's father was also proposed and the plaintiff accepted the amount that the state offered toward payment of those services. Because the state payments did not fully cover the cost of the services rendered to the defendant's father by the nursing home, the plaintiff brought suit in 1977 seeking the unpaid balance from the defendant. When the case was reached on the trial list in February, 1980, the defendant moved the court for an exemption from the trial list. In support of this motion the defendant asserted that the Connecticut department of social services was a necessary party[2] to the suit, that a previous motion to cite in the state had been granted, but that the state had not yet acted upon the defendant's request for permission to sue the state made pursuant to General Stat-

---

[2] We note in passing that the defendant also referred to the state as an "indispensable" party during argument before the trial judge on his motion to strike the plaintiff's complaint for nonjoinder of a necessary party pursuant to Practice Book § 152. That motion, which was denied, was heard just prior to the defendant's motion for exemption from the trial list. Although the defendant originally included this denial of his motion in his preliminary statement of issues, he has not pursued it in his brief. Therefore, we deem that issue abandoned. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559 (1977).

utes (Rev. to 1979) § 4-147.[3] The motion was denied by the court and the case proceeded to trial on the merits.

At trial, the plaintiff sought to establish that the defendant was personally liable to the nursing home for the unpaid-for services rendered to the defendant's father pursuant to the written admission agreement entered into by the defendant and the nursing home. This agreement, which set forth the conditions of the care to be provided to the defendant's father and the costs for such care, was signed by the defendant. The defendant's signature appears at the bottom of the agreement on a blank line under which the words "Responsible Party" appear. There is nothing anywhere in the agreement itself indicating that the defendant signed this agreement as conservator of his father's estate or in any other representative capacity. The trial court found the defendant personally liable on the admission agreement for the unpaid cost of ser-

---

[3] General Statutes (Rev. to 1979) § 4-147 provides: "NOTICE OF CLAIM. FILING FEES. Any person wishing to present a claim against the state shall file with the clerk of the office of the claims commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested, and (4) a request for permission to sue the state, if such permission is sought. Claims in excess of one thousand dollars shall be accompanied by a check or money order in the sum of twenty-five dollars payable to the treasurer, state of Connecticut. Claims for one thousand dollars or less shall be accompanied by a check or money order in the sum of ten dollars payable to the treasurer, state of Connecticut. Fees may be waived by the commissioner for good cause but such action by the commissioner shall not relieve the claimant from the obligation of filing his notice of claim in timely fashion within the statute of limitations under section 4-148. The clerk of the office of the claims commissioner shall promptly deliver a copy of the notice of claim to the attorney general. Such notice shall be for informational purposes only and shall not be subject to any formal or technical requirements, except as may be necessary for clarity of presentation and facility of understanding."

vices rendered[4] to his father, rejecting the defendant's contentions that the words "Responsible Party" are ambiguous and have a meaning that can be ascertained only from parol evidence. The defendant then brought this appeal.[5]

We turn first to the defendant's contention that the trial court erred in denying his motion for an exemption from the trial list. In considering such exemptions, we are guided by Practice Book § 274 which provides: "When a case is reached on the assignment list it shall be tried, defaulted, dismissed pursuant to Sec. 251 or nonsuited, unless for good cause shown the court may order it to be (a) reassigned on a succeeding list; (b) assigned for trial to a future date certain; (c) placed at the end of the trial list; or (d) removed from the trial list. Whenever any privileged or pretried case is ordered placed at the end of the trial list, it shall be placed with the remaining nonprivileged cases. Any case so removed from the trial list or from the pretried or privileged section of the trial list may be reclaimed, but the date on which the reclaim was received shall thereafter be considered as the date it was placed on the trial list." See also Stephenson, Conn. Civ. Proc. (2d Ed. 1982 Cum. Sup.) § 167. It is emphasized that by its terms § 274 vests discretion in the trial judge to alter the commencement of a trial in the manner set forth in that section when "good cause" for such action is shown. The defendant asserts that the trial judge's refusing to exempt this case from the trial list and forcing him to trial was unfair and improper in that the case was tried before an "indispensable" party, the Connecticut department of social services, could be joined by the defendant. In his motion for exemption from the

---

[4] There is no dispute as to the quality and cost of the services rendered by the nursing home, and the parties stipulated that should the plaintiff prevail, the amount of the damages awarded should be $4093.60.

[5] When the plaintiff instituted this action, she did so against the defendant Edward Socha individually and against Kevin Gumpper as administrator of the estate of Michael Socha. Judgment against the latter defendant in the amount of $4077.60 damages was entered by stipulation. Edward Socha individually is the sole appellant on this appeal.

trial list as well as in his argument at that time, the defendant's counsel contended that the state was a "necessary" party. He did not refer to it as an "indispensable" party. As indicated above, however, on a previous motion the defendant's counsel contended that the state was an "indispensable" party to the litigation as contended in his brief and argument before this court. We recognize that the misleading nature of these terms has resulted in a blurring of the distinction typically drawn between them and that it has been suggested that this problem led to the abandonment of these terms in the 1966 amendment to the federal rules of civil procedure. Bruce, "Joinder of Claims, Parties and Counterclaims: A Proposal for Revision of the Connecticut Provisions" 51 Conn. B.J. 354, 358 (1977). Further, the relevant provisions of the Practice Book and the General Statutes make no specific distinction between the terms. See General Statutes §§ 52-102 through 52-108; Practice Book §§ 99, 100; Bruce, supra, 359. The terms as they have been used, however, are not without definitions. Parties have been characterized as "indispensable" when they " 'not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience.' *Shields* v. *Barrow,* 58 U.S. (17 How.) 130, 139 [15 L. Ed. 158 (1855)]; 3A Moore, Federal Practice § 19.07." *Standard Mattress Co.* v. *Hartford,* 31 Conn. Sup. 279, 288, 329 A.2d 613 (1974). Necessary parties, however, have been described as "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court,

so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." *Shields* v. *Barrow,* supra; see *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 13–14, 437 A.2d 822 (1980); *Gill* v. *Shimelman,* 180 Conn. 568, 570–72, 430 A.2d 1292 (1980).

Regardless of the defendant's designation of the state's role as a party, the defendant has made only a bare assertion in his brief that the state is a party whose joinder as a defendant in this controversy prior to trial was absolutely required in order to assure a fair and equitable trial. The defendant has only asserted that he is some type of beneficiary of an agreement made between the state and the plaintiff. He has presented no evidence of the terms of this agreement and has not shown its bearing on the contract between the plaintiff and himself to which the state was not a party. There is nothing in the record before us which indicates that the state is either a necessary or an indispensable party to this case.

In weighing the trial judge's discretion exercised under Practice Book § 274, we first note that discretion "imports something more than leeway in decision-making." *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d 560 (1979). "Judicial discretion . . . is always legal discretion, exercised according to the recognized principles of equity. *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420 [1946]. While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done. *Grievance Committee* v. *Nevas,* 139 Conn. 660, 666, 96 A.2d 802 [1953]." *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 (1970). In essence, the trial judge's discretion should be "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." *Hammerberg* v. *Leinert,* 132 Conn. 596, 604–605, 46 A.2d 420 (1946).

In contending that the trial judge erred in the exercise of his discretion in not exempting this case from the trial list until the state could be joined as a party, the defendant has emphasized the fact that pursuant to a pretrial motion to cite in the state, an order had been entered permitting the defendant to do so. He also claims that because of the procedural difficulties involved in procuring the consent of the state to bring a suit against it under General Statutes (Rev. to 1979) § 4-147, the state could not be made a party at the time of trial. The transcript of the proceedings below, however, clearly reflects that the trial judge, before ordering the trial to proceed, considered the fact that the order granting the defendants permission to cite in the state had been rendered more than six months prior to trial by Judge Henebry. It is quite apparent that the trial judge, in considering this, examined several factors such as the circumstance that the defendant's action to procure the state's consent to the suit under General Statutes (Rev. to 1979) § 4-147 could take an excessive amount of time, especially in view of the potential of an appeal by the dissatisfied party; see *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 608, 376 A.2d 71 (1977); thus permitting the defendant to exercise significant control over the Superior Court docket at the expense of the court and the plaintiff who had filed this suit in 1977. This concern of the trial judge seems reasonable in view of the possibility that the state's consent might never be procured. Moreover, as indicated by the proceedings below, it seems quite likely that at the time the motion to cite in the state was granted by Judge Henebry, neither he nor the parties to this suit were completely aware of the difficulties involved in actually joining the state as a third party defendant. We note that if Judge Henebry had been fully apprised of the procedural difficulties in procuring the state's consent, it would have been within his

broad discretion to deny the defendant's motion to cite in the state on the grounds that it would either unduly delay the trial of a court case then over two years old or work an injustice upon the plaintiff. See *Lettieri* v. *American Savings Bank,* supra; *Jones* v. *Ricker,* 172 Conn. 572, 575 n.3, 375 A.2d 1034 (1977); *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 555, 219 A.2d 225 (1966). From this, the trial judge could reasonably conclude that the likely intent of Judge Henebry's order was only to grant the defendant's request to draw a complaint to be served on the state and not to intercede in the procurement of the state's consent to suit under other applicable law. In sum, a review of the proceedings below indicates that in exercising his discretion, granted pursuant to Practice Book § 274, to deny the defendant's motion for exemption from the trial list, the trial judge did not deviate from our accepted standards of judicial discretion.

We now turn to the defendant's claim that he is not personally liable on the admission agreement which he signed with the nursing home. He argues that the words "Responsible Party," which appear in the admission agreement immediately below his signature, are ambiguous with regard to his personal liability on the agreement. It is generally accepted, as the defendant contends, that when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it; see *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 145–46, 328 A.2d 711 (1973); and, likewise, the language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted. See *Kunian* v. *Development Corporation of America,* 165 Conn. 300, 314, 334 A.2d 427 (1973); *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 376, 321 A.2d 444 (1973); *Beach* v. *Beach,* 141 Conn.

583, 593, 107 A.2d 629 (1954). In giving meaning to the terms of a contract, we have stated that "[a] contract must be construed to effectuate the intent of the contracting parties. *Ginsberg* v. *Mascia,* 149 Conn. 502, 506, 182 A.2d 4 [1962]; *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316 [1959]. 'The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction.' " *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598, 424 A.2d 277 (1979), quoting *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427 (1936). In situations where the parties have their agreement in writing, "their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 14, 420 A.2d 1142 (1979), quoting *Didriksen* v. *Havens,* 136 Conn. 41, 48, 68 A.2d 163 (1949). In interpreting contract terms, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. *Marcus* v. *Marcus,* 175 Conn. 138, 141–42, 394 A.2d 727 (1978). With these principles in mind, we now examine the words "Responsible Party" as they appear in the context of the admission agreement at issue.

The admission agreement is a typed, two-page document containing fifteen numbered paragraphs which set forth the essential terms and conditions of the defendant's father's admission to the nursing home. Paragraph two of the agreement states that "[t]he undersigned shall be *responsible* for the charges herein

agreed upon with the Nursing Home, PAYABLE MONTHLY IN ADVANCE." (Emphasis added.) Paragraph three states that "[t]he undersigned shall be *responsible* for physician's fees, medications and other treatments ordered by the physician . . . ." (Emphasis added.) Paragraph seven states that "[t]he Nursing Home will not be *responsible* for any valuables or money left in the possession of the patient while he is a resident . . . ." (Emphasis added.) Paragraph eleven states that "[t]he patient or the *responsible party* agrees to pay and the Nursing Home agrees to accept the following payment for the care of the patient . . . ." (Emphasis added.) Paragraph twelve states that "[i]f the patient receives public assistance, the financial cost agreement with the public assistance department and the patient or the *responsible party* is as follows . . . ."[6] (Emphasis added.)

From an examination of the admission agreement between the parties, it is clear that the words "responsible" and "responsible party" as they describe the defendant in the context of this contract should be given their natural and ordinary meaning; that being so, the defendant is liable for and legally accountable or answerable for the discharge of the duties and obligations which he had clearly undertaken upon signing the instrument. See *Bostick* v. *Usry,* 221 Ga. 647, 648, 146 S.E.2d 882 (1966) (word "responsible" is synonymous with "liable"); *Manassas Park Development Co.* v. *Offutt,* 203 Va. 382, 385, 124 S.E.2d 29 (1962) (word "responsible" as used in letter contract meant "legally answerable or accountable for the discharge of a duty"); Black's Law Dictionary (5th Ed.); Webster, Third New International Dictionary. "The court will not torture words to impart ambiguity where ordinary meaning

---

[6] The blank spaces provided for in the contract concerning such an agreement reveal no information regarding any such agreement.

leaves no room for ambiguity. *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316 [1959]. The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616–17, 164 A.2d 413 [1960]; see 3 Corbin, Contracts § 542; 4 Williston, Contracts (3d Ed.) § 609." *Zullo* v. *Smith,* 179 Conn. 596, 601, 427 A.2d 409 (1980). Therefore, in construing the contract as a whole; see *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976); we agree with the trial judge that the admission agreement in this case unambiguously placed the defendant in a position of personal liability for the duties and obligations specified therein.

There is no error.

In this opinion the other judges concurred.