[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, the owner of a shopping center in Old Saybrook, has filed suit against the defendant, a tenant in the shopping center, for breach of a commercial lease. The parties have filed cross motions for summary judgment concerning the meaning of a termination provision in the lease. For the reasons stated below, CT Page 4245 the court grants the defendant's motion and denies the plaintiffs motion.
BACKGROUND
A review of the affidavits and other exhibits attached to the summary judgment motion discloses the following undisputed facts. On or about April 9, 1990, Kinney Shoe Corporation d/b/a Footlocker, the predecessor to defendant Venator Group Retail, Inc. (hereinafter "Venator"), entered into an Indenture of Lease with Isidore Rubin, Trustee, the predecessor to plaintiff Matthew Rubin, Trustee (hereinafter "Rubin'). Pursuant to the lease, Venator agreed to rent 1,800 feet of floor space at the Old Saybrook Shopping Center for the ten year period between June 1, 1990 and June 1, 2000, unless the lease was sooner terminated or extended.
Article 59 of the lease contains the lease termination provision in issue here. It provides as follows:
 If any department store shall cease to operate for a period of six months, Lessee may choose to cancel this lease or in lieu of minimum rent, to pay six (6%) of gross sales. Department store shall mean Sage Allen Company and Caldor, and Lessor shall have the right to replace said Sage Allen Company and Caldor with a comparable department store within said six month period before Lessee's option to cancel shall be applicable. If Lessee elects to pay six percent of gross sales, once the department store is replaced with a comparable department store, Lessee will begin paying minimum rent in accordance with the terms of the Lease.
In January or February, 1999, Caldor ceased operating its store at the shopping center. On or about April 1, 1999, Caldor assigned its lease to the Wal-Mart Real Estate Business Trust. On September 23, 1999, Venator notified Rubin that it was exercising its termination rights under Article 59 on the ground that no department store was operating in the former Caldor premises. On October 31, 1999, Venator vacated the premises and closed its Footlocker store. As of March 17, 2000, Wal-Mart had not yet opened for retail business.
Although there is no specific allegation concerning nonpayment in the affidavits, it appears undisputed that Venator has not made the monthly rental payments allegedly due Rubin from CT Page 4246 November 1, 1999 to the present time. In his complaint, Rubin seeks recovery of these rental payments as well as interest, costs, and attorney fees.
DISCUSSION
Summary judgment is appropriate if "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. The trial court "must view the evidence in the light most favorable to the nonmoving party." Connell v. Colwell, 214 Conn. 242, 247,571 A.2d 116 (1990). "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts. . . ." (Internal quotation marks omitted.)Fogarty v. Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1984). The party opposing summary judgment must demonstrate the existence of a material fact issue by "counter affidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. SouthernNew England Telephone Co., 44 Conn. App. 657, 663, 691 A.2d 1107
(1997).
The dispositive issue here is the meaning of Article 59 of the lease.[1] Venator contends that Article 59 required Rubin to replace Caldor with a department store that was operating within six months and, because Wal-Mart did not begin to operate within six months, Venator was free to terminate the lease. Rubin, in his cross motion for summary judgment, maintains that he satisfied Article 59 by replacing Caldor with Wal-Mart within six months regardless of whether Wal-Mart was fully operational during that time period.
In interpreting the lease, the court follows principles of contract law. Amwax Corp. v. Chadwick, 28 Conn. App. 739, 741,612 A.2d 127 (1992).
A contract must be construed to effectuate the intent of the contracting parties. The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. In situations where the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained. In interpreting contract terms, [the court has] repeatedly stated that the CT Page 4247 intent of the parties is to ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.
(Citations omitted; internal quotation marks omitted.) Sturman v.Socha, 191 Conn. 1, 10, 463 A.2d 527 (1983).
Applying these standards, this court must carefully examine the language of Article 59.[2] Looking at the first phrase of the article, there is no dispute that Caldor, which is a "department store," did "cease to operate" for a period of six months. In that situation, the lease further provides that Rubin had the right to "replace" Caldor with a "comparable department store" within six months before Venator's option to cancel the lease or pay six percent of gross sales became applicable. If Venator chose to pay six percent gross sales, then it would have been obligated to pay minimum rent once Caldor was "replaced with a comparable department store . . .
From this analysis, it appears that the dispute here centers on the meaning of the phrase comparable department store." The parties have presented various arguments about their true intentions in using this phrase. Venator contends that it would not have made sense to agree that a comparable department store is a nonoperating department store, because such a store would not attract customers to surrounding stores like Footlocker. Rubin maintains that it would not have agreed to replace Caldor with an operating department store within six months because such a task is commercially impractical.
Suffice it to say that neither party fully contemplated the current situation for, if it had done so, it would have included more specific language in the lease. This court can only rely on the language that the parties did use. Sturman v. Socha, supra,191 Conn. 10. Doing so, the court finds that "comparable department store" means one that operates. In determining what is a "comparable department store" from the language of Article 59, the only reference point is the introductory phrase "[i]f any department store shall cease to operate for a period of six months. . . ."[3] This language, and the negative inference therefrom, identifies the essential quality of a department store as one that "operate[s]." Thus to "replace" a department store that has "cease[d] to operate for a period of six months" with a CT Page 4248 "comparable department store" means to replace it with one that operates.
No dispute exists that Rubin did not replace Caldor with a department store that operated within six months of Caldor's closing. Indeed, more than a year after Caldor closed, its replacement, Wal-Mart, still was not operating. Under the terms of Article 59, Venator was therefore permitted to cancel the lease six months after Caldor closed which, in this case, was as early as August 31, 1999. Rubin is not entitled to rent after that date.
CONCLUSION
The defendant's motion for summary judgment is granted. The plaintiffs motion for summary judgment is denied.
It is so ordered.
CARL J. SCHUMAN, JUDGE, SUPERIOR COURT