[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, ARB Construction, LLC (ARB), seeks money damages from the defendant, The Pinney Construction Corporation (Pinney Corp.), alleging breach of contract and unjust enrichment. ARB claims a balance of payment due from Pinney Corp. on the written contract of June 10, 1999, and a balance due on oral contracts for additional work performed prior to December 20, 1999. Pinney Corp. counterclaims alleging breach of contract and unjust enrichment. Pinney Corp. seeks money damages for ARB's alleged failure to complete its work under the June 10, 1999 written contract and unworkmanlike performance of its obligations under that contract. The court heard evidence on nine trial dates between June 1, 2001, and July 3, 2001. In addition, the court had the benefit of pre-trial memoranda of law submitted by each party and post-trial proposed findings of fact submitted by each.
ARB is owned and operated by Andrew Burnham. Pinney Corp. is owned and operated by Craig Pinney. On May 25, 1999, Pinney Corp. contracted with Silver Cove Associates, LLC (Silver Cove) to reconstruct and provide new construction at Silver Cove's shopping plaza located at 150-210 Silas Deane Highway, Wethersfield, Connecticut (the plaza). Thereafter, on June 10, 1999, Pinney Corp., as general contractor, entered into a one-page written contract with ARB, as subcontractor, for ARB to perform a host of site excavation and preparation tasks at the plaza. When Burnham and Pinney met on June 10, 1999, to draw the contract, they had available to them a set of plans for the plaza, substantially as approved by the Wethersfield planning and zoning commission, including an existing conditions plan, a site plan, a grading and utility plan, a landscape plan, an erosion and sedimentation control plan, a roadway plan, and two pages of construction details. By the terms of the written contract ARB was to be paid in the lump sum amount of $430,000, less a credit of $80,000 for an unrelated job, for a total of $350,000. ARB was to CT Page 11805 undertake and complete the following tasks in accordance with the site plan: reclaimed parking lot, bituminous curbing, cut/repour front concrete curb at plaza, sidewalks, cuts and fills, drainage, sewer, gas trenching, water, sprinkler and hydrant, electrical trenching with pipe included, remove and replace light poles, demolition/excavation rear loading docks and foundations, demolition masonry at overhead doors in rear, demolition bank building, and landscaping. The contract specified that line striping and light poles were not included. By the terms of the written contract ARB was to be paid $30,000 down and a further $20,000 upon the demolition of the bank building, leaving a balance of $300,000.
The first issue for determination by the court is whether the June 10 contract between the parties called for ARB to pave the parking areas of the plaza. Reclaiming a parking lot means digging up the existing asphalt surface, including asphalt curbing and islands, and digging up the subsurface base to a depth of several inches. All the material is simultaneously dug up and ground up by a milling machine and deposited evenly over the compacted subsurface area. Depending upon the desired finished grade, the operator may then skim off some surface inches of the reclaimed material for use elsewhere or he/she may not. What remains on the parking lot is graded and rolled. That completes the reclaiming of the parking lot. After a parking lot is reclaimed, it is suitable for paving. The reclaiming of a parking lot is entirely separate from the paving of a parking lot. Repaving of a parking lot may be done without the reclamation process merely by overlaying asphalt on the existing pavement. A reclaimed parking lot may remain in a reclaimed condition without any paving. The written contract between the parties calls for reclamation of the parking lot. It does not mention paving as a task to be undertaken by ARB. The contract is clear and unambiguous as to the task of paving. "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) Sturman v. Socha, 191 Conn. 1, 11-12, 463 A.2d 527
(1983), citing Downs v. National Casualty Co., 146 Conn. 490, 494,152 A.2d 316 (1959). "The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." Levine v. Massey, 232 Conn. 272, 279, 654 A.2d 737
(1995), citing Connecticut Co. v. Division 425, 147 Conn. 608, 616-617,164 A.2d 413 (1960). Paving is not a part of the June 10, 1999 contract. ARB was not obliged to provide paving at the plaza. ARB contracted with Empire Paving for work at the plaza only as a convenience to Pinney Corp. The responsibility for paving at the plaza lies entirely with Pinney Corp.
The second issue to be resolved by the court is the list of tasks not performed by ARB despite the original expectation it would do so under the CT Page 11806 June 10, 1999 written contract. Considering the credibility of the witnesses and the totality of the evidence, the following is the list of items that were not completed or that could not be completed because of changes to the plans. These items are reasonable credits to Pinney Corp. off the contract price:
 $ 560 Remove old bituminous driveway on Jordan Lane. $ 2,400 Replace existing 5-inch concrete walk with 8-inch concrete walk at new Jordan Lane entry. $ 6,300 Reclaim portion of parking lot in front of Price Rite. $13,900 Portion of new concrete sidewalk plus two handicapped ramps. $ 5,400 Demolition of masonry of 3 overhead doors at rear of building $ 7,500 Landscaping work, including topsoil and seeding at old Jordan Lane entrance, remove existing blue rug junipers and replace with seagreen junipers, add 2 Japanese zelkova trees, add 2 honeylocust trees, add 5 dense spreading yew shrubs, add 17 seagreen juniper shrubs, add 9 5-foot white pine trees, add 6 blue rug juniper shrubs, and add 10 cubic yards of topsoil.
The total credit for work not performed under the written contract is $36,060. Pinney Corp. failed to meet its burden of proving that any of the work performed by ARB at the plaza was unskillful, negligent or unworkmanlike.
There remains the third issue of the extra work undertaken by ARB and reasonable compensation for that extra work. ARB bore the burden of proving that work was undertaken outside the scope of the original contract, the reasonable costs of material and labor for that extra work, and reasonable quantities and measurements. ARB kept virtually no contemporaneous records of the claimed extras except for photographs of the work in progress. Burnham's estimates of quantities of trucked materials were based on summary bills from his own trucking subcontractors. Those subcontractors, in turn, kept questionable records. Burnham made no attempt to verify the accuracy of bills he received from his own subcontractors. The court finds that ARB, as the site preparation subcontractor, was responsible under the contract for erosion and sedimentation control of all areas it excavated. The court is mindful of several additional tasks claimed as extras by ARB. However, the more credible evidence leads to a rejection of those claims as extras. Examining the evidence presented by Burnham, his on-site helper, and his expert estimator, and considering the testimony of Pinney, the court finds the following to be the complete list of extras warranting payment by Pinney Corp.:
 $ 3,000 Gas main — material and labor, including hand digging. $27,060 Road in rear of building. CT Page 11807 $ 2,459 Three gas services, including pumping. $ 1,880 Sprinkler damage. $ 1,760 Test holes and stone at Hollywood Video. $ 720 Removal of Hollywood Video concrete floor. $ 560 Grade Hollywood Video floor. $ 800 Revision to sewer in Hollywood Video. $ 1,400 4 catch basin tops at front of building. $ 1,200 3 rebuilt catch basins. $ 3,030 3 conduits, 6 sweeps for Hollywood Video. $ 2,320 2 pipes, 4 sweeps for Dollar Store/Liquor Store. $ 7,795 Concrete curb/walk repair in front of plaza. $ 4,500 Roof drains at rear of Dollar Store. $ 600 Electrical conduit for future sign. $ 2,400 Trench cutting/patch paving for electrical at front. $ 2,070 Trench cutting/patch paving for storm drainage at front. $ 1,350 Pipe for PriceRite loading dock (north). $ 2,700 Pipe for PriceRite loading dock (south). $ 1,750 Additional catch basin (north side of PriceRite). $ 3,700 Cut out islands and dispose of material. $ 250 Replace manhole face and cover. $ 500 Clean up DM Masonry debris. $ 2,632 Storm/sewer/sprinkler water line revisions. $ 1,240 8 curb stops at Hollywood Video.
The total owed for the extras is $77,676.
Pinney Corp. paid ARB $200,000 plus a $42,000 payment directly to Elite Transport, a subcontractor of ARB, for a total of $242,000 towards the original contract payment of $350,000. On the remaining $108,000, Pinney Corp. is due a credit of $36,060. The balance payable by Pinney Corp. to ARB on the original written contract is $71,940. In addition, Pinney shall pay to ARB $77,676 for extras. The total to be paid is $149,616. Judgment shall enter in favor of the plaintiff in the amount of $149,616. No interest is awarded. The plaintiff is entitled to costs.
Winslow, J.