[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13427
The plaintiff, hereinafter G7, moves for a temporary injunction barring the defendant, hereinafter Ginthwain, from working for his present employer, Connecticut General Life Insurance Company, hereinafter Conn. Gen., claiming that a covenant not to compete precludes him from doing so.
In order to obtain the requested injunction, G7, as the movant, carries the burden of persuasion that it lacks an adequate remedy at law, would likely suffer irreparable harm if the injunction is not granted, that there is a reasonable likelihood it would prevail at a trial on the merits and that the balance of equities favors an injunction. SeeADVEST, Inc. v. Wachtel, 235 Conn. 559, 562-63 (1995); InternationalAssociation of Firefighters Local 786 v. Serrani, 26 Conn. App. 610, 616
(1992); Griffin Hosp. v. Commission on Hosp. Health Care, 196 Conn. 451,457 (1985).
The granting of injunctive relief is not mandatory even if the likelihood of irreparable harm has been shown, and it is a matter within the sound discretion of the Court balancing the equities between the parties. Emhart Industries, Inc. v. Amalgamated Local Union 376, U.A.W.,190 Conn. 371, 406 (1983); Dukes v. Durante, 192 Conn. 207, 225 (1984).
Upon analyzing the testimony and documentary evidence presented at the hearing in this matter, the Court concludes the plaintiff is not entitled to injunctive relief.
On February 11, 2000, when Ginthwain was hired by G7, he signed an employment agreement containing a covenant not to compete, the relevant portions of which are paragraphs 7.A(1) and 7A(2).[1]
G7 provides business consulting services to various companies and Ginthwain set up data warehousing programs for businesses which contracted with G7 to provide that expertise.
Conn. Gen. had need for that type of expertise in connection with a project and contracted with G7 to provide that service. Ginthwain was interviewed by Conn. Gen. personnel and after being approved G7 and Conn. Gen. contracted for his services in said project. During the course of his work at Conn. Gen. that company's Human Resources representative discussed with Ginthwain the possibility of him becoming an employee of Conn. Gen.
When Ginthwain decided to accept employment with Conn. Gen. Ray CT Page 13428 Ziegler, a Conn. Gen. Vice President spoke with G7's CEO, Geoff Ridden and its Vice President of Sales, Joel Shuck. Because Ginthwain was an employee of G7, Ziegler wanted their thoughts on the matter. The G7 executives were not opposed to the idea and they verbally agreed to a transition plan whereby Ginthwain would resign from G7 effective June 22, 2001 and that Conn. Gen. would continue to pay G7 for his services until June 22nd and then Ginthwain would start as a Conn. Gen. employee on June 25, 2001.
Ginthwain was informed of that transition plan and e-mailed a letter of resignation to G7 (Def. Ex. 7). That letter contained language G7 found offensive. Said language read that "Ray [Ziegler] and I fully expect that G7 systems will act honorably, be morally correct and adhere to core values. Therefore, we (emphasis added) expect G7 to pay my weekly billable bonus through 6/22/01, pay out the vested bonus through 6/22/01 and pay out the customer satisfaction bonus (CSB) through 2nd quarter 2001. If this will not happen, please let me know immediately." Angry that Ginthwain intruded its customer, Conn. Gen. into his compensation package with G7, he was terminated the following day (May 16, 2001) for "ethical violations" and was thereafter warned that his employment at Conn. Gen. would be a violation of the covenant not to compete. This injunction action subsequently ensued.
There are weaknesses in G7's case which lead this Court to determine it has not shown the likelihood of success to a reasonable certainty which would warrant granting an injunction.
The non-compete covenant was drafted by the plaintiff. It is well settled that the terms of a contract are narrowly construed against the drafter. Sturman v. Socha 191 Conn. 1, 9 (1983). The clause in question prohibits Ginthwain from "performing . . . services for any person, firm or corporation whose business is directly or indirectly competitive with the business being carried on by [G7]." Conn. Gen. is not a provider of data warehousing services. It provides insurance and financial planning services. The drafter could have easily provided a prohibition against working for a customer, but did not do so.
In addition there is the issue of waiver of G7's right to enforce the non-compete clause. G7 and Conn. Gen. agreed that Ginthwain could accept employment with Conn. Gen. and further agreed to a transition timetable. In reliance on that agreement, Ginthwain submitted his resignation. These facts further negatively impact the plaintiff's likelihood of prevailing on the merits.
An additional consideration is the breadth of the geographical area covered by the employment agreement. It includes ten states, including CT Page 13429 several in which G7 apparently does not do business. See Russo Associates,Inc. v. Cachina, No. 276910, 1995 Conn. Super. LEXIS 248 (Conn.Super. 1995).
As to the alleged violation of paragraph 9[2] of the employment contract, the Court agrees with Ginthwain, that assuming a violation occurred, that would not be a basis for granting an injunction. As sought in this case, injunctive relief can only be premised on the provisions of paragraph 7.
Because the plaintiff has failed to prove the likelihood of success on the merits, the motion for a temporary injunction is denied.
Klaczak, J.